RAILWAY TERMINAL WAREHOUSE AND STORAGE COMPANY, Respondent, *v.* JAMES GEARY and Another, Appellants.

Third Department, March 4, 1925.

Corporations — officers — action to compel officer and employee who purchased real estate under lease to corporation to transfer same to corporation and to account for rents and profits — said officer and employee proceeded openly in purchase of building and offered to transfer it to corporation for purchase price — corporation did not take advantage of offer for several months — purchasers collected reasonable rent from corporation in meantime — purchasers will not be compelled to transfer at purchase price less amounts paid to them by corporation for rent and less alleged overpayment of salary to one of them.

An officer and an employee of a corporation, who purchased a building under lease by the corporation in order to prevent the building being sold to another to the disadvantage of the corporation, and who thereafter offered to transfer the building to the corporation for the purchase price, which offer the corporation did not accept for several months, during which time the purchasers collected a reasonable rent for the building from the corporation, will not be compelled,

in an action for the transfer of the building to the corporation and for an accounting for the rents and profits, to transfer the building for the purchase price paid by the purchasers, less the rent they received from the corporation, and less also an alleged overpayment of salary to one of the purchasers.

Appeal by the defendants, James Geary and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 24th day of March, 1924, upon the decision of the court rendered after a trial at the Albany Trial Term before a court and a jury, the jury having been dismissed at the close of the case.

The plaintiff demands that defendants may be adjudged to have purchased a warehouse and to hold it as trustees for the plaintiff; that the defendants be required to account for the rents and profits thereof; that the warehouse be conveyed to the plaintiff upon payment of $4,500 (the purchase price), less the amount of rents illegally received by them.

The plaintiff, a corporation, does a storage and warehouse business. In 1920 Mrs. Porter and Mrs. Herrick owned its stock, except one share transferred to defendant Geary; these three were the directors. Geary was the treasurer and general manager, with authority to sign and issue checks. Plaintiff owned two buildings on property of the Delaware and Hudson Railroad Company, to which it paid ground rent. It rented from Hollister & Co. a warehouse, also on Delaware and Hudson property, for which the rent reserved was $80 a month and an agreement to handle in and out the goods of Hollister & Co., which retained storage room for its goods in one-half the building. Hollister & Co. made an assignment and on March 4, 1922, Geary and Harrington, then in the employ of plaintiff, having been informed that the assignees were about to sell the Hollister building and others were looking for it, contracted to purchase it for $4,500 and paid down $50. The court found, at defendants' request, that on March 7, 1922, Geary met the two other directors and informed them that the defendants had purchased the Hollister building; on March eighth they paid $100 more on account; on March fourteenth they paid the balance, $4,350, and took a conveyance to themselves. The court also found that on March seventh Geary informed the directors that the purchase was made in the interest of the company and that the company could buy the building at any time. The company had been using continuously this building and after the purchase Mr. Geary paid to himself and Harrington $75 a month each for the rental of the entire building. Nothing was done by the company towards purchasing the building until April 7, 1923, when, at a meeting of the directors, it was resolved that the

president be " authorized to purchase and secure the Geary and Harrington storehouse, owned by James Geary and Patrick F. Harrington, for the use of this corporation " and " to make and execute in the name and on behalf of this corporation a note or other obligation in payment for said property." The parties then met at the office of defendants' attorney to arrange for the transfer. The company demanded that from the purchase price defendants should deduct all the rents received by them during the period, $1,650, and a further sum which Geary had taken in overpayment of salary. Following the advice of counsel the defendants refused to accept these conditions. Mr. Hodgkins testifies that, on behalf of Mrs. Porter and Mrs. Herrick, he examined the books of the corporation in 1920, 1921 and 1922 and made statements of its financial condition; that he entered a credit of one-third of the net profits to each of the directors, " as per agreement at the annual meeting between the three stockholders," at which he was present; that Mr. Geary was to have for salary $30 a week and at the end of the year one-third of the profits in a drawing account. This latter we understand is the alleged overpayment of salary. A separate action is now pending to recover this. During the period from March, 1922, to the beginning of this action no offer to purchase, nor request that defendants convey the building to the plaintiff had been made, except as above stated.

*John T. Norton,* for the appellant Geary.

*George C. Lecomte* [*John T. Norton* of counsel], for the appellant Harrington.

*W. Joseph Shanley* [*Daniel J. Dugan* of counsel], for the respondents.

VAN KIRK, J.:

There is no evidence of bad faith or wrongdoing on the part of the defendants; in fact the contrary appears throughout the record. The plaintiff was using and needed the Hollister warehouse. When the defendants were informed that others were seeking to acquire it and the assignees were about to sell, they purchased it to protect the company and its interests and without selfish purpose. They did this without any assurance from the company that it would approve the purchase or rent the property from them. Before the transaction was consummated Geary informed the two other directors of the reason for the hurried purchase and of defendants' intent in purchasing. There is no suggestion of an intent to conceal or unjustly gain advantage from any relation of trust and confidence. Mrs. Porter is said to have

7

Third Department, March, 1925. [Vol. 212

remarked, when told that defendants had purchased the property, that the company would take the property; but it took no action to that end. This failure to act may perhaps be understood in the light of the financial condition of the plaintiff at the time. Though the plaintiff knew of the contract to purchase before it was performed, it left the defendants without aid from it to furnish the purchase money, which they did; one defendant mortgaging his property to procure his share. Having paid for the building they properly, with the knowledge of the directors, took title in their names. In whose else could they take it? This done the plaintiff and defendants stood in this position: the defendants were the owners; their money was tied up in the building; theirs was the entire risk of loss from depreciation, from cancellation of the ground lease, from failing business, from competition, from fire. The plaintiff on the other hand was under no obligation to take the building off their hands, but it had an option or privilege to take over the property at the price paid, which privilege it could elect to exercise at any time. The plaintiff, however, made no motion looking to the exercise of this privilege for thirteen months after the purchase. On April 7, 1923, at a directors' meeting, a resolution was passed to take over the property and give the company's note for the purchase price; but when, in pursuance of the resolution, an offer for the property was made to the defendants, it was not a request for or tender of performance of the option. Conditions were imposed with which defendants were in no wise called upon to comply. The first condition was that the rentals received by the defendants, then the owners, for the use of their building, be deducted from the purchase price, without at the time offering any allowance to them for upkeep, taxes, insurance and the ground rent paid by them. Certainly defendants were entitled to a reasonable rental; there is no evidence that the rental charged was unreasonable; we think it was reasonable. The company knew all the facts all the time; it knew the building was being used solely for the company's business; that, though it had been given the privilege of purchasing, it had never purchased. Geary testified that he talked with Mrs. Porter about the rental; but, if this testimony is rejected, still the company must have known that, while it was using the property of another, it was incurring an obligation to pay rent therefor. The second condition was that the alleged overpayment of salary to Geary be deducted. Whether or not there had been such overpayment is not material; a tender or demand of performance of the option could not be incumbered by such an alleged offset. In fact another action is pending, brought by the company against Geary, to recover this overpayment.

The judgment should be reversed and the complaint dismissed, with costs.

We disapprove of findings as follows:

Findings 15, 16, 25; that part of finding 18 as follows: " Which payments [for rentals] were made without the consent of said plaintiff or its officers or directors. That the checks dated April 28, 1923, payable to the order of James Geary and Patrick F. Harrington and signed by Maggie A. Porter, as president, and James Geary, as treasurer, were secured from the plaintiff corporation under the pretense of being issued for salaries; " that part of finding 21, as follows: " That the plaintiff was willing and ready to pay said sum of $4,500, plus interest thereon, taxes and ground rent, to the defendants upon being allowed the deduction claimed on behalf of the plaintiff."

We find that, in purchasing the Hollister building, the defendants acted in entire good faith; that they became and are the rightful owners of the building in question and of reasonable rentals therefor; that the plaintiff has the privilege to take it over on payment of $4,500, with interest; that the plaintiff has never elected to have its rights under its option or privilege; that no demand has been made by plaintiff upon the defendants for a conveyance to it of said building; that defendants could not be placed in default, or in the wrong, until the plaintiff had made its election to take over this property and had made demand in accord with its privilege therefor; that the judgment be reversed and the complaint dismissed, with costs.

All concur.

Judgment reversed on the law and facts and complaint dismissed, with costs. The court disapproves of findings as stated in opinion.